AUBREY C. MCGILL AND BEATRICE MCGILL *v.* MUDDY FORK OF
SILVER CREEK WATERSHED CONSERVANCY DISTRICT

[No. 1-976A159. Filed December 6, 1977.]

*William J. Hanger* and *William L. Allen, III, Hanger, Allen &
Engebretson,* of Clarksville, for appellants.

*Chester R. Hobbs,* of Salem, for appellee.

LYBROOK, J.—This appeal arises from a judgment of the trial court in a condemnation proceeding. The trial court granted motions, filed by the plaintiff-appellee conservancy district (District), to withdraw its exceptions to the appraisers' report as well as those exceptions filed by the defendants-appellants, Aubrey C. and Beatrice McGill, which thereby removed the issue of compensation for damages from a determination by a jury and fixed damages at the amount stated in the appraisers' report.

We affirm.

A statement of the proceedings in this case will reveal the facts necessary for our decision. On November 4, 1971, the District filed its complaint in condemnation against the McGills, who entered an appearance in the same month. At a hearing on December 15, 1971, the court issued the order of appropriation and appointment of appraisers, wherein the appraisers were ordered to file their report with the clerk on the 10th day of January, 1972, at 9:30 o'clock, a.m. The order reveals that Aubrey C. McGill, Beatrice McGill and the attorney for the District were present in court when the order was issued. The District filed a request for trial by jury on the issue of damages, on December 20, 1971. The appraisers filed their report as ordered, on January 10, 1972, and on the same day the District filed its exceptions to the report. The McGills did not file their exceptions to the report until January 21, 1972. No other pleadings were filed in this case until February 21, 1975, at which time the McGills requested a jury trial. The trial was set for June 26, 1975. On June 20, 1975, the District filed three motions: (1) to withdraw its own exceptions to the appraisers' report, (2) to withdraw the McGills' exceptions, and (3) for summary judgment. On June 25, 1975, the McGills filed a motion to strike the District's motions and submitted a supporting brief. The trial date was continued, and on April 7, 1976, the court granted the District's motions to withdraw and dismiss the exceptions. Because the court did not rule on the motion for summary judgment, the McGills filed a Trial Rule 53.1 motion to withdraw submission of the motion from the judge. On June 21, 1976, the Indiana Supreme Court denied the motion to withdraw

submission based on its finding that the motion for summary judgment was moot. On June 7, 1976, the McGills moved for a rehearing on the District's motions and in the alternative moved to correct errors. The trial court denied the motions and an appeal was perfected.

The McGills present eight issues for our review:

I. Whether the District withdrew its exceptions to the appraisers' report in an untimely manner;

II. Whether the District filed its motions (a) to dismiss its exceptions, (b) to dismiss the McGills' exceptions and (c) for summary judgment in an untimely manner and in contradiction of a local rule of Clark County Circuit Court;

III. Whether the District's motion for summary judgment was improperly filed under Trial Rule 56;

IV. Whether the 1973 amendment of IC 1971, 32-11-1-8 (Burns Code Ed.) is a procedural amendment which must be applied retroactively to this case;

V. Whether the same 1973 Amendment was remedial and whether it should be applied to this case;

VI. Whether the clerk of the court was required by Trial Rules 5(A) and 72(D), to notify the McGills or their attorney of the filing of the appraisers' report, and whether failure to so notify was prejudicial to the McGills;

VII. Whether the trial court erred in refusing a trial by jury;

VIII. Whether the rulings of the trial court constitute an unconstitutional taking of the McGills' property without just compensation as required by both the United States and Indiana constitutions.

I.

McGills contend that the trial court erred in granting the District's motion to dismiss its exceptions to the appraisers' report, which, coupled with the granting of its other motions, allowed the District to withdraw the case from a determination by a jury "on the eve of trial." The

McGills contend that they were prejudiced by this ruling because they had invested substantial time and had incurred expenses in preparation for the trial.

The McGills argue that *State v. Blount* (1972), 154 Ind. App. 580, 290 N.E.2d 480, is similar and therefore controlling on the issue whether the District's motions for withdrawals of exceptions to appraisers' report were untimely.

In *Blount*, the State filed a condemnation complaint, the order of appropriation was entered, appraisers were appointed, their report was filed, and the State filed exceptions to the award and a demand for a jury trial. There the similarity to the instant case ends. Pursuant to Ind. Rules of Procedure, Trial Rule 16, the parties in *Blount* attended a pre-trial conference and the court entered a pre-trial order. That order listed the issues, stated that the issues were closed, set the trial date, and further declared:

" '*Pre-trial order governs*: This pre-trial order has been formulated after a conference with Counsel for the respective parties and unless corrections are submitted to the Court within five days from the date of receipt of copy of the order, *this order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice*. The pleadings will be deemed merged herein.' (Emphasis supplied)." 290 N.E.2d at 482.

On the day of the trial the State refused to proceed. Subsequently the State moved to withdraw its exceptions but that motion was denied and the case proceeded to trial. On appeal the State argued that it had an absolute right to withdraw its exceptions in a condemnation case. This court held that the State, having sought a jury trial and having agreed thereto via the pre-trial order could not thereafter unilaterally withdraw or dismiss its exceptions in contravention of the agreed pre-trial order.

The parties in the case at bar did not participate in a pre-trial conference or agreement, or receive a pre-trial order. This court did not hold in *Blount* that there is some time span after which a motion to withdraw in a condemnation case becomes untimely; or that solely by filing a request for a jury trial some "implied agree-

ment" arises between the parties which precludes any later withdrawal of the exceptions.

We do not find *Blount* compelling in this case. In the absence of such an express agreement or pre-trial order we hold that the District's motion to withdraw its exceptions was timely filed and the trial court did not err in granting said motion.

## II.

Secondly, the McGills contend that the trial court erred in considering and ultimately granting the Distict's motion to dismiss its exceptions to the appraisers' report, to dismiss the defendants' exceptions to the appraisers' report, and for summary judgment, which were improperly filed under Rule 11 of the Local Rules of Practice of the Clark Circuit Court. The Rule provides that:

> "Each adverse party shall have 15 days after service of the motion in which to file and serve his response, and the moving party shall have 5 days after service of the response in which to file and serve his reply."

The District's three motions were filed on June 20, 1975, six days before the date set for trial.

Clearly the purpose of this local rule is to provide an opportunity for the party against whom a motion is filed to oppose the motion and to have ample time to prepare a brief to aid the trial court in its ruling on the motions. The McGills apparently had ample opportunity to oppose the motion, because on June 25, 1975, they filed both a motion to strike the District's motions as well as a thorough brief on the points of law. The same day, after the court took the matter under advisement, the attorneys for the parties jointly moved for a continuance,[1] which motion the court granted. The ruling on the motions was not made before the end

---

1. Although the McGills insist in their brief that they opposed a continuance, the record indicates that "the parties by their attorneys . . . jointly move[d] the Court for continuance, which motion [was] granted." We must assume that the defendants also moved for the continuance, for the "transcript of the record imports absolute verity to the proceedings held in the trial court." *Auto Owners Insurance Co. v. Buckeye Union Casualty Co.* (1962), 133 Ind. App. 379, 182 N.E.2d 429, 433.

of the period provided in Rule 11 for filing of opposing motions and briefs. On September 9, 1975, the McGills filed a supplemental brief, and on April 7, 1976, the court ruled on the motions.

The motions filed by the District were not ruled on before affording the McGills reasonable opportunity to oppose them. The McGills do not argue that they were prejudiced by these proceedings, but only contend without authority that since the motions were filed improperly under the local rule, said motions should have been dismissed.

Since the parties were able to file their briefs and motions, the McGills were not prejudiced and the purpose of the local rule was not thwarted. We hold that the trial court committed no error in considering the District's motions and in rendering its decision thereon.

### III.

Since we have held above that the trial court's judgment granting the District's motions to dismiss the exceptions is without error, we do not need to consider the McGills' third issue in which they argue that the District's motion for summary judgment, also filed on June 20, 1975, was improperly filed under Ind. Rules of Procedure, Trial Rule 56(C).[2] The decision of the trial court which dismissed the exceptions to the appraisers' report removed the necessity for a trial and rendered moot the motion for summary judgment which was subsequently stricken from the trial record.

### IV. & V.

We will consider together the McGills' fourth and fifth issues, wherein they contend that the amendment of IC 1971, 32-11-1-8 (Burns Code Ed.), which became effective in 1973, should have been applied retroactively to this condemnation action.

The statute which was in effect when this condemnation proceeding commenced provided:

---

2. The McGills did have the opportunity to respond thoroughly to the District's motion for summary judgment. The trial court never ruled on the motion but finally struck it from the record. The McGills do not contend that they were prejudiced by such proceedings. The trial court did nothing that could be considered error in regard to the motion for summary judgment. *See: Smith v. Young* (1974), 160 Ind. App. 83, 310 N.E.2d 84.

"Any party to such action, aggrieved by the assessment of benefits or damages, may file written exceptions thereto in the office of the clerk of such court in vacation, or in open court if in session, within ten [10] days after the filing of such report, and the cause shall further proceed to issue, trial and judgment as in civil actions; the court may make such further orders, and render such findings and judgments as may seem just." * * * IC 1971, 32-11-1-8 (Burns Code Ed.).

The legislature amended this statute in 1973, to provide twenty days after the filing of the appraisers' report for aggrieved parties to file written exceptions. Under the new legislation the twenty day period runs from the date of notice of filing of the report which must be sent by the clerk to all known parties to the action and their attorneys of record. The McGills filed their exceptions to the appraisers' report on January 21, 1972, eleven days after the report was filed. They argue, however, that since the case was still pending in the trial court when the statutory amendment became effective, we should consider their filing to be timely and valid under the extended twenty day limit.

Ordinarily an amendatory act is construed prospectively, and not retroactively unless expressly provided therein. *State ex rel. Mental Health Commissioner v. Estate of Lotts* (1975), 165 Ind. App. 347, 332 N.E.2d 234; *City of Indianapolis v. Wynn* (1959), 239 Ind. 567, 157 N.E.2d 828. The prospective operation is favored where rights or obligations are created or upset by the amendatory legislation. *State v. Morand* (1976), 169 Ind. App. 604, 349 N.E.2d 718; *Malone v. Conner* (1963), 135 Ind. App. 167, 189 N.E.2d 590.

Where no new rights are given or existing rights taken away, and the new legislation only provides a new remedy for the enforcement of an existing right, retroactive operation may be given to a remedial statute where such construction is necessary to carry out the purpose of the new law. *Staple v. Richardson* (1966), 140 Ind. App. 20, 212 N.E.2d 904; *Malone v. Conner, supra; The Connecticut Mutual Life Insurance Co. v. Talbot* (1887), 113 Ind. 373, 14 N.E. 586.

Alternatively, new legislation may only change a mode of pro-

cedure in the law while providing a remedy substantially similar to the existing one. If a new procedural statute does not create new or take away vested rights, it will not come within the general rule against retrospective operation of statutes, and will be applied to all cases pending and subsequent to its effective date. *In re Smith* (1945), 115 Ind. App. 494, 60 N.E.2d 147; *Southern Indiana Railway Co. v. Peyton* (1901), 157 Ind. 690, 61 N.E. 722.

It is our opinion that we need not reach the question whether the statute should be considered remedial or procedural, and whether it should be construed to apply retroactively. In this case, even if it were, the new twenty day extension for the filing of exceptions cannot validate the McGills' failure to file within the ten day requirement of the old law.

Retroactive operation of a procedural or remedial amendment means that it may be applied to rights of action whether accrued before or after the change in the law. *Herrick v. Sayler* (7th Cir. 1957), 245 F.2d 171, 174 (on petition for rehearing); *In re Smith, supra.* It does not apply to procedural steps already taken under the previous law, as the McGills argue it should be applied in this case.

"Unless an intent to the contrary is expressed, a statute providing, or merely affecting, the remedy may apply to, and operate on, causes of action which had accrued and were existing at the time of the enactment of the statute, as well as causes of action thereafter to accrue, and to all actions, whether commenced before or after its enactment; and also, unless an intent to the contrary is expressed, such enactments as do not affect the nature of the remedy, but relate solely to incidents of procedure, are applicable to all proceedings taken in pending actions from the time they take effect. Ordinarily such a statute will not nullify steps previously taken in actions pending at the time of its enactment, *or validate proceedings unauthorized by the prior statute* . . . .

\* \* \*

"The rule that statutes changing remedies or procedure *generally affect future steps* in pending suits is not in conflict with the rule against retroactivity, because in such cases the

statute *is applied only in a prospective way.*" (Emphasis added). 82 C.J.S. Statutes § 422 (1953); *see also*: 2 Sutherland, Statutory Construction, 281 (4th Ed. 1973).

Indiana courts similarly hold that where new legislation does not affect previously existing rights of action the jurisdiction of the court in pending proceedings continues with the proceedings thereafter conforming to the new legislation. *Mayne v. The Board of Commissioners of Huntington County* (1890), 123 Ind. 132, 24 N.E. 80; *Hine v. Wright* (1941), 110 Ind. App. 385, 36 N.E.2d 972; *Kingan and Co., Ltd. v. Ossam* (1918), 75 Ind. App. 548, 121 N.E. 281.

The exceptions were filed in an untimely manner under the statute in effect at that stage of the condemnation proceedings. We conclude that enactment of the statutory amendment one and one-half years later will not validate the failure to timely file the exceptions, even if the new statute would be found to apply retroactively to the cause of action (because it is a remedial or procedural statutory amendment), and thus affect proceedings subsequent to its enactment.

### VI.

As their sixth issue the McGills contend that the trial court committed reversible error in sustaining the District's motion to strike their exceptions to the appraisers' report which exceptions were filed more than ten days after the report was filed. The McGills contend that they were entitled to have a trial on their exceptions because the court clerk failed to notify them or their attorney of the filing of the appraisers' report as allegedly required by Ind. Rules of Procedure, Trial Rules 5(A) and 72(D).

On the facts of this case, the McGills have no claim under TR. 72(D). That rule directs the clerk to serve notice of the entry of a ruling upon a motion, an order or judgment, by mail upon parties who have appeared in the action. The only order entered was the order of appropriation. The record discloses that both Aubrey and Beatrice McGill were present in court at the entry of that order, and under TR. 72(D) the clerk was not obligated to serve

parties that were present with the order. The report of the appraisers is not the type of entry required by TR. 72(D) to be served upon the appearing parties.

We believe that TR. 5(A) also does not require service of the report of the appraisers in a condemnation proceeding. The Trial Rule does not direct that each party shall be served with every paper filed with the court, but section (A) specifically directs that certain described pleadings and papers be served:

"(A) Service: When required. Unless otherwise provided by these rules or an order of the court, each party shall be served with

(1) every order required by its terms to be served;

(2) every pleading subsequent to the original complaint;

(3) every written motion except one which may be heard ex parte;

(4) every brief submitted to the trial court except trial briefs;

(5) every paper relating to discovery required to be served upon a party; and

(6) every written notice, appearance, demand, offer of judgment, designation of record on appeal, or similar paper. No service need be made on parties in default for failure to appear, except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."

We hold that the report of the appraisers is not encompassed or contemplated by the words of section (A) or TR. 5.

The McGills argue that, based on the holding in *Cordill v. City of Indianapolis* (1976), 168 Ind. App. 685, 345 N.E.2d 274, since they were not in default for failure to appear, they were entitled to be served with a copy of the report under Trial Rules 5(A) and 72(D). We disagree.

*Cordill* only held that "when there is no *proper* appearance there is no duty on the clerk to serve the appropriation order or the appraisers' report and the time begins to run when the report

is filed." *Cordill*, 345 N.E.2d at 277. In dicta this court commented that had Cordill's appearance been properly made it would have been the clerk's duty to serve him with the report. Cordill, however, does not appear to have ever raised that issue. Cordill did contend that his attorney filed an appearance card, and his attorney did not attend the appropriation hearing because Cordill had no legal reason to object to the appropriations. His attorney:

> ". . . relied on the clerk of the court to give him *notice of the order* entered at the appropriation hearing *so that he would be alerted to file exceptions* to the appraisers' report if his client deemed the appraisal too low." *Id.* at 275. (Emphasis added).

Apparently he actually did *not* rely on receiving notice of the filing of the report, or on receiving the report itself.

The McGills were present at the appropriation hearing and were aware that the appraisers had been appointed and that the appraisers were ordered and directed to file their reports on (not by) the 10th day of January, 1972, at 9:30 o'clock, a.m. The facts of this case do not indicate that it would be too heavy a burden for the parties to inquire from the court on that day whether the report had been filed as specifically ordered.

We hold that at the time the report of the appraisers was filed in the condemnation proceeding the clerk of the court had no duty under Trial Rules 5(A) or 72(D) to serve the McGills with a copy of the report, and the McGills had no basis upon which to claim a right to have been served with a copy of the report.

## VII.

For their seventh issue the McGills allege error was committed by the trial court in not allowing a trial by jury upon the issues raised by the exceptions to the appraisers' report. We have found herein that the District properly withdrew its exceptions to the report of the appraisers and that the exceptions filed by the McGills were untimely filed.

*State v. Redmon* (1933), 205 Ind. 335, 186 N.E. 328 is still controlling precedent on this issue. *Ray v. State* (1969), 252 Ind. 395,

248 N.E.2d 337; *State ex rel. Agan v. Hendricks Superior Court* (1968), 250 Ind. 675, 235 N.E.2d 458. The Supreme Court stated therein, at 205 Ind. 339:

". . . if one party files within the ten-day period and does not dismiss his exceptions . . . it would not be prejudicial error to allow the other party to file exceptions after the time limited. This follows from the judicial holding that the filing of exceptions by either party brings before the court the whole question of allowable damages; and, consequently, the issues would not be enlarged by a filing of exceptions by the second party. *Toledo, etc., Ry. Co. v. Wilson* (1909), 44 Ind. App. 213, 81 N.E. 508, 88 N.E. 864. That was the actual situation in the case of *Midland Ry. Co. v. Smith, supra*. But we do not think that any legal effect can be given to the filing of exceptions after the expiration of the ten-day period and if the party who has filed in time dismisses his exceptions there is no issue as to damages before the court."

After the trial court granted the District's motion to withdraw its exceptions, there remained no issues to be tried by a jury. Following *State v. Redmon*, we concluded that:

". . . the filing by [appellant] of exceptions to the appraisers' report after the expiration of ten days after such report was filed was a nullity, that the jurisdiction of the trial court to try the issue of damages rested entirely upon the exceptions of [appellee]; and that when the trial court sustained [appellee's] motion to dismiss its exceptions the trial court had no power to proceed further in the trial." *Id.* at 340.

The McGills' contention that they did not consent to a withdrawal of a demand for trial by jury is without force where there remains no issues for a jury to try. *See*, Ind. Rules of Procedure, Trial Rule 38(D).

## VIII.

The McGills have waived any consideration of their last issue in which they contend that the trial court did not allow adequate damages and that such error resulted in an unconstitutional taking of their property without just compensation. The McGills failed to proceed in their brief with argument or citation of authorities beyond the bald assertion of error. Ind. Rules of

Appellate Procedure, Appellate Rule 8.3(A)(7); *Haynes v. Haynes* (1975), 167 Ind. App. 55, 337 N.E.2d 580.

Finding no error in the decision of the trial court, we affirm.

Affirmed.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 370 N.E.2d 365.